IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL ROPPOLO<br>Plaintiff<br>v.<br>JAMES YATES, et al.,<br>Defendants | Case No. CIV-19-127-RAW-SPS<br>PAGE 1 |

## PLAINTIFF'S AMENDED COMPLAINT

## DECLARATION ONE

Pursuant to 28 USC § 1746, I Paul Roppolo declare under penalty of perjury that the following information is true and correct. Name: Paul Roppolo

Signature: [signature]                    Date: 04/14/20

1. a. I have filed several grievance(s) against prison staff throughout my present incarceration regarding the inadequate [medical] mental health care that prison staff has deliberately indifferently rendered upon myself.

b. I have also used the prison's telephone(s) throughout my present incarceration to call my friends and

associates to verbally voice my complaint(s) to my friends about the inadequate mental health care that prison staff has rendered to myself. And as I would be speaking to my friends upon the prison telephone, my friends would record my voiced complaint(s) made against prison staff, and my friends would then upload my [priorly recorded] voiced complaint(s) to a Website called Appollo Motivates.com.      And upon this Website, other persons whom accessed this internet website would then be able to hear my [previously recorded] voiced complaints that I had made about the prison(s)' and prison staff(s)' inadequate mental health care that was being rendered unto myself.

2. Defendant Lt. SANDERS told me that since I like filing grievance(s) against prison staff, and since I was knowingly allowing my friends to record my voiced complaint(s) - where my friends were placing my recorded voiced complaint(s) against prison staff's

inadequate mental health care upon the website to be heard by the public on this internet website Appollo Motivates.com, in response defendant Lt. SANDERS told me that he was going to ensure to have me placed at Holdenville C.C.A. Super Maximum Security Segregation Prison for a long, long, time.

3. Defendant Lt. SANDERS then immediately directed and approved for his prison staff to write two false class X misconduct reports against myself, in 2017, falsley claiming that I, (1) had directly accessed the Internet, and, falsely claiming that I, (2) had threatened prison staff's life.

4. Defendant Lt. SANDERS directed, approved, and was present for five prison guards to physically approach myself and threaten myself to be physically beaten by all five guards unless I immediately agreed to physically sign guilty to the two above falsely issued class X misconduct reports.

Only upon the immediate and present threat and promise by

the guards, that they would all physically beat myself to death, upon that physical coercion I signed guilty to these two falsdy issued class X misconduct reports.

5. Defendant Lt. SANDERS told me that he himself, the classification staff, and the warden of Stringtown OK, Prison, all knew that the two class X misconduct report(s) were falsley issued against myself; however, Lt. SANDERS told me that the very purpose of SANDERS, classification staff, and the warden of Stringtown OK Prison, all agreeing together in the issuance of and the physical coercion against myself to sign guilty to the two false misconduct(s), was to purposefully have myself transferred to a Supermaximum Segregation Security Prison such as C.C.A. Holdenville.

6. Defendant Lt. SANDERS told me that the reason classification staff and the Warden at Stringtown Prison had both agreed and approved for the two class X misconduct(s) to be falsley written against

myself and for myself to be transferred to a Super Maximum Security Prison, was directly and only because I had filed so many grievances against prison staff and because I was knowingly allowing my friends to record my prison telephone conversation(s) of my voiced complaint(s) against prison staff regarding the inadequate mental health care that was being rendered unto myself.

7. Directly as a result of myself signing guilty to the two falsely issued class X misconduct report(s), I was immediately placed on a transfer list.

Defendant Lt. SANDERS told me that if I, at any time, or place of imprisonment, ever filed a grievance or used any prison telephone to voice my complaint to my friends, in a direct complaint against SANDERS, Stringtown Classification Staff or Warden or SANDERS' prison guards, regarding the two falsely issued class X misconducts or the physical threat to beat myself as coercion to sign guilty to the two false misconducts or the purposeful retaliatory transfer to

another higher security prison, SANDERS told me that he himself and the Inspector General would take action to have me killed at whatever future facility that I was housed.

8. As a direct result of myself signing guilty to the two falsely issued class X misconduct(s), I was immediately shipped from Stringtown OK Prison, to Correctional Corporation of America Prison- Supermaximum Security Segregation Unit, in Holdenville Oklahoma.

9. My First Amendment right to petition the courts and my First Amendment right to Freedom of speech was violated by defendant Lt. SANDERS directing and approving of the two false misconduct report(s) to be issued against myself, directing and approving of the five prison guards to threaten to immediately beat myself as a coercive force to make me sign guilty to the two false misconduct report(s), directing approving and agreeing with the Stringtown Prison Warden and Classification Staff to utilize the two class X guilty

conviction(s) as the reason to have me transferred to a Supermaximum Security Segregation Prison, as defendant Lt. SANDERS' adverse reaction to my constitutionally protected conduct outlined in Item 1.a., and 1.b., of this Declaration.

10. My First Amendment right to petition the courts and my First Amendment right to Freedom of speech was violated by the [Jane Doe/John Doe - Name Unknown] Classification Supervisor and Warden of Stringtown OK Prison, in both of their agreeing and approving of the two false class X misconduct report(s) to be issued against myself, in both of their agreeing and approving of myself to be physically coerced into signing guilty to the two falsely issued misconduct(s), and in their both directing approving and agreeing with defendant Lt. SANDERS to utilize the two class X guilty conviction(s) as the reason to have me transferred to a Supermaximum Security Segregation Prison, as Classification Supervisor's and the Warden's adverse reaction

8

to my constitutionally protected conduct outlined in
Item 1.a., and 1.b., of this Declaration.

11. Before I had been transferred to Holdenville Supermax,
mental health staff at Stringtown Prison told me that they
had directly advised defendant Lt. SANDERS, the
Classification Supervisor, and the Warden, that it
was not lawful to knowingly seek placement of a
prisoner as myself, whom has severe manic-depressive
bipolar disorder condition, to be transferred to a highly
restrictive facility such as a Supermaximum Segregation
Security Prison, as Holdenville.

Mental Health Staff at Stringtown Prison, told me that
upon advising defendant SANDERS, the Classification
Supervisor, and the Warden, that it was unlawful to
knowingly complete paperwork to seek for myself, a
prisoner with severe manic-depressive bipolar disorder, to
be transferred to a Supermaximum Security Facility; mental
health staff told me that defendant SANDERS, the
Classification Supervisor, and Warden, completely disregarded
mental health staff, and requested my transfer to Supermaximum Prison.

IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF OKLAHOMA

PAUL ROPPOLO
   Plaintiff
V.
JAMES YATES, et al.,
   Defendants

Case No. CIV-19-127-RAW-SPS

PAGE 1

PLAINTIFF'S AMENDED COMPLAINT

DECLARATION TWO

Pursuant to 28 USC § 1746, I Paul Roppolo declare under penalty of perjury that the following information is true and correct. Name: Paul Roppolo

Signature: Paul R                    Date: 04/14/20

I. a. Subsequent from being transferred from Mack Alfred Correctional Facility, upon arriving at Davis Correctional Facility Supermaximum Security Segregation Unit in Holdenville Oklahoma, defendant ADEA advised me that defendant SANDERS (the lieutenant at Mack Alfred Corr. Facility, in

2

Stringtown Oklahoma), defendant Marty Garrison, (Internal Affairs Officer at Davis Correctional Facility), defendant Donnie Andersen (Inspector General), defendant Randy Knight (Office of The Inspector General, Agent), defendant YATES (Warden at Davis Correctional Facility), and defendant BROWN (Major at Davis Correctional Facility) had all told defendant Ms. ADEA that I have filed several grievance(s) against prison staff throughout my present incarceration regarding the inadequate [medical] mental health care that prison staff has deliberately indifferently rendered upon myself.

1.b. Defendant Ms. ADEA also advised me that defendant SANDERS, defendant GARRISON, defendant ANDERSON, defendant KNIGHT, defendant YATES, and defendant BROWN had all told defendant Ms. ADEA that I have used the prison's telephone(s) throughout my present incarceration to call my friends

and associates to verbally voice my complaint(s) to my friends about the inadequate mental health care that prison staff has rendered to myself, where as I would be speaking to my friends upon the prison telephone, my friends would record my voiced complaint(s) made against prison staff, and my friends would then upload my [priorly recorded] voiced complaint(s) to a Website called AppoloMotivates.com, where other persons whom accessed this internet website would then be able to hear my [previously recorded] voiced complaint(s) that I had made about the prison(s)' and prison staff'(s) inadequate mental health care that was being rendered unto myself.

2. Defendant Ms. ADEA told me that since I like filing grievance(s) against prison staff, and since I was knowingly allowing my friends to record my voiced complaint(s) - where my friends were placing my recorded voiced complaint(s) against prison staff's inadequate mental health care upon the website

to be heard by the public on this internet website.
AppoloMotivates.com, in response defendant Ms.
ADEA told me that she was given a direct order
from defendant GARRISON, defendant ANDERSEN,
defendant KNIGHT, defendant YATES, and defendant
BROWN all in an collective agreement together to
take the following action(s) against myself, where
Ms. ADEA carried out the following act(s) and omission(s)
against myself pursuant to these five above
defendant(s) direct order(s) to defendant ADEA :
2. Defendant ADEA directed the guards on the
Davis Correctional Facility Supermaximum Security
Segregation Unit, where I was housed, to
immediately place myself inside a cell that was
flooded with sewage and human feces; as well as
the cell's sink and toilet had visible human vomit
covering these facilitie(s). The bed and walls had
been smeared with human feces.

Defendant ADEA and the guards refused to provide myself any cleaning supplies, that I had requested to clean this cell. As a result, I was forced to eat, sleep, and live in direct physical contact with sewage, human feces, and human vomit within my cell for a period of three weeks, before I was able to use a personal bar of bathing soap to remove the sewage and human waste from my cell.

3. Defendant ADEA directed and ensured that the guards on my Unit, had repeatedly urinated upon and smeared feces within each and every weekly prison clothes laundry exchange that I was given. As a result of my clothes being repeatedly and purposefully soiled by defendant ADEA and the guards, I was forced to go without a clean pair of shirt and pants to wear, for 16 months of my incarceration at Davis Correctional Facility. I was forced to attempt to 'self-clean' such shirt and

pants, within my cell.

4. Defendant ADEA purposefully yelled out to the entire Unit of prisoners, to falsely exclaim to the prisoners on my Unit that I was a "snitch". Defendant ADEA told me the reason that she had purposefully lied, to falsely yell out to the prisoners that I was a "snitch", was to purposefully cause the other inmates on my Unit to take action to severely injure or kill myself.

During my period of incarceration at Davis Correctional Facility, Ms. ADEA told me that she had directed the guards on my Unit to purposefully allow the other inmates on my Unit to both possess knives, and, to both be enabled to place 'rigs' in the locking mechanisms of their cell doors.

Defendant ADEA told me that she had done all of this, in order to force myself to have to remain within my cell, being unable to access the shower or the

outside of cell exercise room, upon my Unit.
Defendant ADEA told me that she had directed the
guards on my Unit to refuse to intervene to protect
myself, from the inmates whom [ being deceived
by Ms. ADEA who falsley told the prisoners
that I was a "snitch"] were able to personally
unlock their own cells and attack myself with their
knives and shanks, at the moment the guards would
'escort' myself, while I was handcuffed, to the
shower, or to the outside of cell exercise room.
- As a direct result of the above act(s) and omission(s)
of defendant ADEA and the guards on my Unit,
I was only able to attain a total of (4) four
showers, outside of my cell, during my entire 18
month incarceration at Davis Correctional Facility
Supermaximum Security Segregation Unit.
In comparison, the other prisoners on my Unit were
as a regular course, provided (3) three showers a

8

week, out side of cell.

- As a direct result of the above act(s) and omission(s) of defendant ADEA and the guards on my Unit, I was only able to attain a total of (4) Four hours of outside of cell exercise, during my entire 18 month incarceration at Davis Correctional Facility Supermaximum Security Segregation Unit.

In comparison, the other prisoners on my Unit were as a regular course, provided (5) Five hours a week of outside of cell exercise.

5. Thereafter myself being placed in a position to be forced to remain within the confines of my cell, due to the refusal of defendant ADEA and the guards to take any action to prevent myself from being physically attacked or killed by the other prisoners on my Unit, defendant ADEA purposefully directed and approved for (6) six false misconduct

reports to be issued against myself on the date(s) of 01/14/19, 02/12/19, 02/12/19, 02/20/19, 03/22/19, 04/11/19, and 05/29/19. These falsley written and falsely issued misconducts against myself, were all class A misconducts for 'Disobeying Orders'. Ms. ADEA and the guards simultaneously would order me to physically come outside of my cell, or, would order me to accept to have a cellmate, while at the same time Ms. ADEA and the guards promised me that once I came out of my cell, that I would be physically attacked by multiple inmates upon my Unit, and, Ms. ADEA and the guards promised me that once an inmate was allowed to be housed within my cell, that such inmate would kill myself in my sleep, because the inmates had been falsely told by Ms. ADEA that I was a "snitch". It is clear that a prisoner as myself, being faced and

forcefully placed in this unsafe position, would not reasonably agree to physically come out his cell, and, would not reasonably agree to accept another cellmate to be placed within my cell.

Defendant ADEA told me that she knew that such, six, 'Direct Orders' for myself to either come out of my cell, or to accept a cellmate, were all not warranted and neither valid, but defendant ADEA told me that by directing and approving for myself to be issued these six false misconducts, that ADEA was following the direct order(s) given to ADEA from defendants GARRISON, ANDERSON, KNIGHT, YATES, and BROWN, to continue to punish myself since I like to file grievance(s) against prison staff and since I like to use the prison telephone to voice my complaint(s) to my friends - where my friends would record my

voiced complaint(s), and place my recorded voiced complaint(s) upon the website AppoloMotivates.com.

6. My First Amendment right to petition the courts and my First Amendment right to freedom of speech was violated by defendant ADEA purposefully directing the guards to place myself to be housed inside a cell that was flooded and contaminated with sewage, human feces, and human vomit, and, to knowingly refuse to provide myself any cleaning supplies to remove the sewage and human waste, as defendant ADEA's adverse reaction to my constitutionally protected conduct outlined in Item 1.a. and 1.b. of this Declaration.

My First Amendment right to petition the courts and my First Amendment right to freedom of speech was violated by defendants GARRISON, ANDERSON, KNIGHT, YATES, and BROWN

12

purposefull directing of defendant ADEA to carry out the acts to have me placed within a cell flooded with sewage, human feces, and vomit, and, to refuse to provide myself any cleaning supplies to remove the sewage and human waste from my cell, as defendants GARRISON'S, ANDERSON'S, KNIGHT'S, YATES', and BROWN'S adverse reaction to my constitutionally protected conduct outlined in Item 1.a. and 1.b. of this Declaration.

7. My First Amendment right to petition the courts and my First Amendment right to freedom of speech was violated by defendant ADEA purposefully directing the guards to urinate upon and smear human feces within my, change-out of prison clothes, as defendant ADEA's adverse reaction to my constitutionally protected conduct outlined in Item 1.a. and 1.b. of this Declaration.

My First Amendment right to petition the courts

and my First Amendment right to Freedom of speech
was violated by defendants GARRISON, ANDERSON,
KNIGHT, YATES, and BROWN purposeful directing
of defendant ADEA to carry out the acts to
have my weekly change out of prison clothes
repeatedly urinated upon and smeared with human
feces, as defendants GARRISON'S, ANDERSON'S,
KNIGHT'S, YATES', and BROWN'S adverse reaction
to my constitutionally protected conduct outlined
within Item 1.a. and 1.b. of this Declaration.

8. My First Amendment right to petition the
courts and my First Amendment right to Freedom of
speech was violated by defendant ADEA'S
purposeful falsely yelling out to the Unit of prisoners
to falsely allege that I was a "snitch", For
ADEA'S direct purpose to cause the prisoners
upon my Unit to take action to severely
injure or kill myself, and, For ADEA to

simultaneously refuse to take proper action to
protect myself from the other inmates on my
Unit by allowing the prisoners to possess thives
and shanks, and enabling the prisoners to
be able to freely unlock their own cells; as
ADEA committed the above act(s) and omission(s),
for ADEA's ultimate successful purpose to deprive
myself of being provided a lawfully adequate
number of showers a week and to deprive myself
of a lawfully adequate amount of hours of
outside of cell exercise, a week.
My First Amendment right to petition the courts and
my First Amendment right to freedom of speech was
violated by defendants GARRISON, ANDERSON, ALLBAUGH,
KNIGHT, YATES, and BROWN purposeful directing
of defendant ADEA to carry out the act to yell
out to the prisoners on my Unit to falsely
allege against myself to be a, "snitch", for

GARRISON'S, ANDERSON'S, KNIGHT'S, YATES', and BROWN'S purpose to cause the prisoners on my Unit to take action to severly injure or kill myself, and, for GARRISON'S, ANDERSON'S, KNIGHT'S, YATES', BROWN'S directive to Ms. ADEA and the guards to simultaneously refuse to take any proper action to protect myself from the other inmates on my Unit by allowing the prisoners to possess knives and shanks, and enabling the prisoners to be able to freely unlock their own cells; as GARRISON, ANDERSON, KNIGHT, YATES, and BROWN directly ordered ADEA and the guards on my Unit to render such deliberate act(s) and omission(s) against myself for all of the above defendant(s)' ultimate successful purpose to have deprived myself of being able to attain a lawfully adequate number of showers a week and to have deprived myself of a lawfully adequate amount of hours of outside of cell exercise, a week.

16

9. Defendant ADEA advised me that if I ever, at any time, at any prison, filed any grievance(s), or, voiced my complaint(s) to my friends on the prison telephone for my friends to record my voiced complaint(s) to be then uploaded to the website for the public to hear, ADEA advised me that if I ever in the future at any time grieved by filing or voiced recorded complaint, against the retaliatory deprivation(s) of shelter, sanitation, clothes, mental health care, basic hygiene showers, reasonable safety, and outside of cell exercise, defendant ADEA threatened myself with the promise that she and the Inspector General would contact and pay the guards at any prison that I was located, to physically beat me to death. This chilled me from my ordinary firmness to file grievances against the multiple specific retaliatory deprivation(s) that these defendants committed against myself at Davis C.F.