IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PAUL T. ROPPOLO,

          **Plaintiff,**

vs.

JAMES YATES, et al.,

          **Defendants.**

Case No. CIV-19-127-RAW-SPS

## DEFENDANT'S MOTION TO DISMISS
## AND BRIEF IN SUPPORT

COME NOW Defendants CoreCivic, Yates, Brown, Garrison, Ade, Larimer and Sanford by and through their attorney of record, Darrell L. Moore, OBA #6332, and pursuant to 42 U.S.C. § 1997e(a) and Federal Rules of Civil Procedure Rule 12(b)(6), respectfully move this Court to dismiss Plaintiff's action.

Plaintiff filed his 3rd Amended Complaint with this Court on April 17, 2020. By way of this Motion to Dismiss, Defendants respectfully ask the Court to review that amended complaint, and to then determine the following question: Whether Plaintiff *properly* exhausted administrative remedies as to the claims he has presented to the Court.

Pursuant to LCvR 7.1(b), Defendants' Motion and brief demonstrating Plaintiff's failure to exhaust administrative remedies is presented to this Honorable Court as one document.

The Tenth Circuit Court of Appeals, in Steele v. Federal Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003)(citing to Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001)), abrogated in part on other grounds; and Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), has stated reliance upon pleadings and administrative materials, such as grievance records and grievance policies, are allowable in determining a Motion to Dismiss.

Defendants herein raise only the threshold issue of Plaintiff's failure to exhaust administrative remedies.  It is respectfully requested that if the Court converts this Motion to Dismiss to a Motion for Summary Judgment, that the Court grant Defendants, if any portion of the Plaintiff's action survives, leave to later file a Motion for Summary Judgment on the merits of the case.

## STATEMENT OF THE CASE

Plaintiff appears pro se.  Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections.  He is currently housed at Cimarron Correctional Facility, in Cushing, Oklahoma.   However, at all times relevant to this action with regards to allegations made against these Defendants, Plaintiff was housed at Davis Correctional Facility, Holdenville, Oklahoma pursuant to a contract between CoreCivic and the Oklahoma Department of Corrections.  CoreCivic owns and operates the Davis Correctional Facility.  Defendants Yates, Ade, Larimer, Brown, Garrison, and Sanford were at all times relevant to Plaintiff's allegations employees of CoreCivic at the Davis Correctional Facility.  Defendant Yates was the facility Warden at Davis Correctional Facility.  Defendant Ade is a Unit Manager.  Defendant Larimer is the facility Health Services Administrator. Defendant Sanford is the facility Mental Health Coordinator.

Defendant Brown is the Chief of Security.  Defendant Garrison is the facility investigator. The remaining served Defendants are employed by the Oklahoma Department of Corrections.

## PROPOSITION

### If Plaintiff Failed to *Properly* Exhaust Administrative Remedies as to his Claims, Any un-exhausted Claim Must Be Dismissed.

The Prison Litigation Reform Act (PLRA), enacted by the Congress in 1996, directs prisoners to exhaust administrative remedies before initiating legal action complaining of prison conditions under section 1983. The PLRA states, as follows:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

Plaintiff's pro se third amended Complaint, filed pursuant to 42 U.S.C. § 1983, alleges Defendants violated his civil rights by denying him necessary mental health care, by taking retaliatory actions against him, by improperly classifying his security level, and by subjecting him to various unconstitutional conditions of confinement at Davis Correctional Facility (i.e., a dirty cell, denial of cleaning supplies, failure of staff to protect Plaintiff, denying him access to recreation, denying him access to showers, and soiling his weekly laundry exchange).

In Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002), the Supreme Court determined what the §1997e(a) term "prison conditions" means.  Justice Ginsburg, delivering the opinion of a unanimous Court stated as follows:

> "For the reasons stated, we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, at 532.

Plaintiff's allegations levied against Defendants fall within the rubric of "inmate suits about prison life." Thus, consistent with Porter, id., the PLRA exhaustion requirement must be applied to Plaintiff's suit and all his allegations contained therein.

The Supreme Court decision of Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) did nothing to weaken, modify, or repudiate the Porter decision that an inmate must exhaust administrative remedies complaining of "prison conditions." In Jones, 918-919, the Supreme Court, when referring to the Porter decision, stated, "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."

It makes no difference that Plaintiff was an inmate held in a privately-operated facility. The exhaustion requirement applies fully when the plaintiff is a federal or state inmate held in a privately-operated facility.  See Ross v. County of Bernalillo, 365 F.3d 1181, 1184 (10th Cir. 2004), abrogated in part on other grounds, Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910 (2007).

**a. Administrative Remedies were in place at the Davis prison.**

The Oklahoma Department of Corrections has promulgated an inmate/offender grievance process and the process is used at Davis Correctional Facility.  A copy of the applicable DOC grievance process policy document, OP-090124, is attached hereto as Exhibit 1.

The Oklahoma DOC administrative remedies policy first requires an inmate to attempt to resolve any issue through informal resolution.  This is done by the inmate submitting a Request to Staff (RTS) to the appropriate staff member.  If the inmate is not

satisfied with the response from the staff member, he must then file a formal grievance, attaching to the grievance the Request to Staff with the response from the staff member.

If the inmate remains unsatisfied following the filing of the grievance, and his receipt of the grievance response, as a final step the inmate must appeal the matter to the Oklahoma DOC's Administrative Review Authority.  The ruling of the administrative review authority is final and concludes the administrative remedy process for inmates within the jurisdiction of the Oklahoma Department of Corrections.  *See* Exhibit 1, DOC OP-090124, ¶VII, Appeal Process and Procedure.

Plaintiff's complaint is silent as to any efforts he made regarding exhaustion of administrative remedies.

b.  **Plaintiff's use of the Administrative Remedies Process.**

According to Terry Underwood, the Grievance Coordinator at Davis Correctional Facility, Plaintiff did submit grievances while he was incarcerated as Davis Correctional Facility, but he did not exhaust administrative remedies as to any grieved issue.  *See* Ms. Underwood's affidavit attached hereto as Exhibit 2, ¶7, 21.

Plaintiff's Grievance Records are attached hereto as Exhibit 3 and a synopsis of those records is as follows:

**Grievance No. 2018-1001-031-G: (Exhibit 3, Pgs. 1-8)**

Plaintiff submitted a Request to Staff to the Law Library Supervisor on February 6, 2018 requesting he be provided with shepardized cases that support his listed cases. That RTS was responded to by the Library Supervisor noting that she could not do the research or the shepardizing for him, but that he could sign up for legal research computer time.

5

Plaintiff submitted Grievance No. 2018-1001-031-G on February 21, 2018 asking that he be allowed to purchase shepardized cases that support his cases. That grievance was denied on March 1, 2018 noting:

> *Plaintiff Roppolo asked that the Law Library allow him to purchase only the most favorable U.S. Supreme Court decisions that are relevant to the court cases he listed.*
> *After an investigation of the matter Willa Burney, Law Library Supervisor advised that I/M Roppolo is able to do his own research into what cases would be most favorable to the cases he listed. It is not the Law Library's or the Law Library clerks' responsibility to do the research for him. After I/M Roppolo determines what cases are most favorable, the Law Library will print them and allow him to purchase the documents.*

Plaintiff appealed that Grievance response to Medical Services. On March 27, 2018 the Grievance was returned to him unanswered as having been improperly submitted.

**Grievance No. 2018-1001-095-G: (Exhibit 3, Pgs. 9-12)**

Plaintiff submitted a Request to Staff to Health Services Administrator Larimer on April 4, 2018 stating he was willing to pay Mr. Larimer out of pocket for Mental Health Therapy if he would allow it. That RTS was responded to by the Health Services Administrator on April 9, 2018 noting: *This is not allowable – you have been given handouts from mental health to help you.*

Plaintiff submitted Grievance No. 2018-1001-095-G on April 27, 2018 complaining that for seven years he had been asking DOC, and DCF for months, for counseling. The Grievance was returned to him unanswered on April 30, 2018 as having been filed out of time, noting that his RTS was answered on April 9 and that his Grievance was filed April 27 – more than the allowable 15 days.

**Grievance No. 2018-1001-098-G: (Exhibit 3, Pgs. 13-18)**

6

Plaintiff submitted a Request to Staff to Health Services Administrator Larimer on April 23, 2018 requesting mental health therapy from the State of Oklahoma. On April 25, 2018, HSA Larimer responded: *You have seen mental health 4-12-18, 4-23-18, and 4-24-18.* Plaintiff submitted Grievance No. 2016-1001-184-G on May 1, 2018 stating: *THERAPY!* The grievance was responded to as follows:

> *Plaintiff Roppolo requested that he be treated by the Mental Health Staff more than be given handouts or quick chats at his door. After an investigation of the matter by Ray Larimer, Health Services Administrator, I/M Roppolo was seen by Mental Health on 4/12/2018, 4/23/2018 and 4/24/2018. I/M Roppolo is being followed per DOC Guidelines. Inmate Roppolo's Relief is Denied.*

Plaintiff appealed that Grievance response to Medical Services. On June 8, 2018 the Grievance appeal was returned to him unanswered noting:

> *You are out of time to submit this complaint. According to OP-090124, the documents must be received in the appropriate office within the requisite time frame. Policy mandates that your "Request to Staff" (RTS) form be received within seven (7) calendar days of the underlying incident. The event of which you complain occurred on April 5, 2018. Your RTS was not stamped into the law library until April 23, 2018. Consequently, you are out of time to submit grievance #2018-1001-00098-G.*

**Grievance No. 2018-1001-347-G: (Exhibit 3, Pgs. 19-25)**

Plaintiff submitted a Request to Dental Staff on November 18, 2018 asking that he be placed on the list to receive a new partial. That same date he submitted another Request to Dental Staff asking when his first appointment had occurred. The response was it appears to have been on 1-9-18. Plaintiff submitted Grievance No. 2018-1001-347-G on December 4, 2018 stating he wanted to know if the dentist intended on making Plaintiff wait a full year. The Grievance was returned unanswered to Plaintiff on December 10, 2018 noting that the RTS request was inconsistent with the request in his Grievance; that his Grievance could not be completed in pencil; and that he could only

7

address 1 issue per grievance. He was permitted 10 days to correct and resubmit the grievance, but he did not do so.

**Grievance No. 2018-1001-381-G: (Exhibit 3, Pgs. 26-29)**

Plaintiff submitted a Request to Staff to Warden Yates on December 10, 2018. That RTS was redirected to the facility's Mental Health Staff. Plaintiff asked if he could have his agent post his feelings, requests, desires and story concerning his mental health to the internet. Plaintiff submitted Grievance No. 2018-1001-381-G on December 26, 2018 asking if it is his 1st amendment right to have his agent post his mental health story and supplements to the internet. Yes? Or No? The Grievance was returned to Plaintiff unanswered on December 28, 2018 noting that this issue as presented was not grievable.

**Grievance No. 2019-1001-026-G: (Exhibit 3, Pgs. 30-34)**

Plaintiff submitted a Request to Staff to Unit Manager Ade on December 18, 2018 stating that he wanted to know whom at Lexington arranged to send him to DCF Supermax. UM Ade responded on December 20, 2018 stating, "I have no access to that, we receive who DOC population sends us." Plaintiff submitted Grievance No. 2019-1001-026-G on January 8, 2019 stating he wanted to know the name of the persons that actually signed for him to be sent to Max. That Grievance was returned to Plaintiff unanswered on January 24, 2019 noting, "you will receive an amended response from Unit Manager Ade. Once you have done what she suggested, you can resubmit your grievance regarding this matter." Plaintiff chose not to resubmit.

**Grievance No. 2019-1001-053-G: (Exhibit 3, Pgs. 35-39)**

Plaintiff submitted a Request to Staff to the Chief of Security on January 18, 2019 asking if he can expect punishment from disregarding the COS's direct orders and

expressing to the public his life story.  Chief Brown responded on January 24, 2019 stating that a review will be conducted into your action, if found in violation of policy you will receive a write up.  Plaintiff submitted Grievance No. 2019-1001-053-G on February 1, 2019 stating he would follow the OP 060125 and punish me, not have me killed like certain guards have tried to help me by such warnings.  The grievance was returned unanswered on February 6, 2019 noting that due to Plaintiff's abuse of the Grievance Process he was receiving an official Grievance Restriction warning.

**Grievance No. 2019-1001-192-G: (Exhibit 3, Pgs. 40-49)**

Plaintiff submitted a Request to Staff to Unit Manager Ade on April 3, 2019 regarding having an agent use the DCF toll phones to record his mental health story.  UM Ade responded on April 4, 2019 stating, "no sir, your voice recording cannot be placed on your website."  Plaintiff submitted Grievance No. 2019-1001-192-G on April 11, 2019 stating "I want therapy.  I want to be well - that's all."  That Grievance was returned unanswered on April 17, 2019 noting that the RTS issue was not consistent with the submitted Grievance issue.  Plaintiff was given 10 days to correct his grievance and re-submit.

Plaintiff did resubmit his grievance on April 26, 2019.  He attached to the Grievance an RTS seeking the answer to the question, "is the above not my freedom of speech?" referencing again his request to have phone recordings made and uploaded to his personal website.  Unit Manager Ade's response indicates that it should not be done while he is in DOC custody.  In the Grievance Plaintiff asked, "do you deny my agent to record he and I phone call and upload to personal website."  The re-submitted Grievance No. 2019-192 was returned unanswered on May 29, 2019 noting that the grievance form

was not correctly completed, that the Grievance and Request to Staff must be specific as to a complaint with dates, places, personnel involved and how the inmate was affected. Finally, the response noted that due to Plaintiff's continued failure to properly submit the grievance he was out of time.

**Grievance No. 2019-1001-194-G: (Exhibit 3, Pgs. 50-54)**

Plaintiff submitted a Request to Staff to Unit Manager Ade on April 3, 2019 stating he needed the name of an inmate U/M Ade had attempted to place in his cell several weeks prior. U/M Ade responded on April 5, 2019 stating that she was not sure of whom he was speaking. Plaintiff submitted Grievance No. 2019-1001-194-G on April 11, 2019 stating he needed the rest of his name , as a SGT just got word to me that his last name is Jenson. The Grievance was returned unanswered on April 17, 2019 noting that with grievances writing was not allowed in the margins. He was provided 10 days to correct the Grievance and resubmit. Plaintiff chose not to do so.

**Grievance No. 2019-1001-206-G: (Exhibit 3, Pgs. 55-59)**

Plaintiff submitted a Request to Staff to Unit Manager Ade on April 16, 2019 asking if UM Ade was going to punish him for breaking the Ops and her direct orders. Plaintiff stated, "I don't think you can." UM Ade responded on April 17, 2019 that if he broke policy, he would receive a misconduct. Plaintiff submitted Grievance No. 2019-1001-206-G on April 29, 2019 again asking if he was going to be punished for breaking Ops and asking for a yes or no answer. The Grievance was returned unanswered on April 27, 2019 noting that issues related to misconducts were not grievable.

**Grievance No. 2019-1001-237-G: (Exhibit 3, Pgs. 60-64)**

Plaintiff submitted a Request to Staff to Ms. Sanford (Mental Health) on April 16, 2019 stating he wanted to speak with her and decide together what could be done to help him. That RTS was responded to by Ms. Sanford on April 18, 2019 noting: *We have talked since you wrote this.*

Plaintiff submitted Grievance No. 2019-1001-237-G on April 26, 2019, stating, "stop punishing me for being scared to come out of this hole. Help me." The Grievance was returned unanswered to Plaintiff on May 29, 2019 noting that the grievance was not properly completed and that medical grievances must be directed to Ray Larimer, Health Services Administrator.

**Grievance No. 2019-1001-238-G: (Exhibit 3, Pgs. 65-70)**

Plaintiff submitted a Request to Staff to Unit Manager Ade on April 12, 2019 stating he wanted her to look at his mental health issues by not coming out and consider the fact that he had no behavior write ups and to return his level -canteen – phone and place a good cellie in E-B. The RTS was responded to by Ms. Ade on April 17, 2019 noting: Misconducts you received were due to your refusal to leave seg.

Plaintiff submitted Grievance No. 2019-1001-238-G on April 26, 2019 stating, "I want you to confirm this is a mental health issue and return my privileges and stop punishing me." The Grievance was returned unanswered on May 29, 2019 noting that the grievance was not properly completed and that misconduct issues are not grievable.

c. **Plaintiff clearly had access to the Administrative Remedies Process.**

As demonstrated by his grievance filings attached hereto as Exhibit 3, Plaintiff clearly had access to the administrative remedies process at Davis Correctional Facility. Terry Underwood, the facility Grievance Coordinator, searched the facility's records and

11

logs and determined Plaintiff filed twelve (12) grievances while he was confined at Davis Correctional Facility. See Exhibit 2, affidavit of Terry Underwood, ¶7.

### d. *Proper* **exhaustion is required but was not accomplished by Plaintiff.**

Noting that the word "exhausted" is a term of art in both administrative law and habeas law, Justice Alito, writing for the Court in <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006), stated as follows;

> "With this background in mind, we are persuaded that the PLRA exhaustion requirement requires proper exhaustion."

And,

> "Construing §1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn the provision into a largely useless appendage."

As regards whether an inmate had *properly* exhausted administrative remedies, Chief Justice Roberts, writing for the Supreme Court in <u>Jones v. Bock</u>, 127 S.Ct. 910, 922 (2007), stated, "In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules.' (*see* <u>Woodford</u>, at 548 U.S., at 88). And, the Chief Justice further stated, "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id., at 923.

The administrative remedies process was available to Plaintiff Roppolo. As testified to by Ms. Underwood, he clearly had access to the process. Plaintiff simply failed to follow instructions contained within the DOC policy and that were provided to him by facility staff. As a result, he failed to *properly* exhaust administrative remedies.

When determining what constitutes "proper exhaustion," Chief Justice Roberts noted in Jones, at 923, that: "We leave it to the court below in the first instance to determine the sufficiency of the exhaustion in these cases." Herein, Plaintiff's use of the administrative remedies process was not sufficient to constitute exhaustion of any of his claims.

The Oklahoma DOC inmate/offender grievance process has repeatedly been reviewed by the Courts and the Courts have accepted DOC OP-090124 and its procedural process and rules. *See* Hemphill v. Jones, 343 F. App'x 329, 332 (10th Cir. 2009); Smith v. Beck, 165 F. App'x 681, 683-84 (10th Cir. 2006); Holden v. Dinwiddie, 343 F. App'x 297, 299 (10th Cir. 2009); and, Williams v. Sirmon, 350 F. App'x 294, 298 (10th Cir. 2009).

The Oklahoma DOC policy requirements and procedures are no doubt specific, but they are not so complicated or convoluted as to justify not properly following them. If the Plaintiff was able to navigate the Court system and file a civil rights complaint with this Court, it is difficult to imagine that he was not capable of following the grievance procedure and listening to instructional assistance from the facility's Grievance Coordinator.

Exhaustion must occur before the filing of a lawsuit. *See* Jernigan v. Stuchell, 304 F.3d 1030 (10th Cir. 2002) ("[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies"). Plaintiff's failure to *properly* complete the grievance process regarding the claims he has now brought forward to this Court against these Defendants constitutes a failure by him to first *properly* exhaust administrative remedies.

As a result, Defendants' Motion to Dismiss Plaintiff's claims and action must be granted by this Honorable Court.

## **CONCLUSION**

Because of Plaintiff's failure to first exhaust administrative remedies before initiating this litigation, the Court should dismiss the Plaintiff's complaint. Defendants' Motion to Dismiss should be granted. Upon dismissal of all of Plaintiff's claims and his complaint, Defendants request all further relief to which they may be justly entitled.

>Respectfully submitted,
>Defendants CoreCivic, Yates, Brown,
>Garrison, Ade, Larimer and Sanford.
>
>*/s/ Darrell L. Moore*
>―――――――――――――――
>DARRELL L. MOORE, OBA #6332
>COURT PLACE AT NORTH VANN
>P.O. BOX 368
>PRYOR, OK  74362
>(918) 825-0332
>(918) 825-7730 fax
>jrmpc@swbell.net
>Attorney for CoreCivic Defendants

## *Certificate of Service*

      I hereby certify that on June 25, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

      ☑ I hereby certify that on June 25, 2020, I served the attached document by regular US Mail on the following, who are not registered participants of the ECF System:

Paul Roppolo, #600968  
Cimarron Correctional Facility  
3200 S Kings Hwy  
Cushing, OK 74023

*[signature]*  
DARRELL L. MOORE