**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

**PAUL ROPPOLO,**

        Plaintiff,

**v.**                            **Case No. 19-CV-127-JFH-JAR**

**JAMES YATES, et al,**

        Defendants.

## OPINION AND ORDER

This action is before the Court on Defendants' motions to dismiss.  Dkt. No. 76;

Dkt. No. 87.  Plaintiff Paul Roppolo ("Roppolo") is a pro se litigant who previously was a prisoner

in the custody of the Oklahoma Department of Corrections ("DOC").  He brings this action under

the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional

violations during his incarceration at Davis Correctional Facility ("DCF"), a private prison in

Holdenville, Oklahoma, and Mack Alford Correctional Center ("MACC") in Stringtown,

Oklahoma.  His third amended complaint names the following defendants:  DCF Warden James

Yates; FNU Adea a/k/a Ade, DCF Unit Manager; Ray Larimer, DCF Health Services

Administrator; Sandra Sanford, DCF Mental Health Coordinator; Major Brown, DCF Chief of

Security; Marty Garrison, DCF Investigator; CoreCivic, owner and operator of DCF; Donnie

Andersen, Inspector General of the State of Oklahoma; Randy Knight, DCF Internal Affairs

Officer; Lt. Sanders, MACC Correctional Officer; and Joe Allbaugh, DOC Director.  Dkt. No. 49

at 3-4, 9-11.  Roppolo also lists two (2) "additional" defendants:  Jane or John Doe, Chief

Classification Placement Supervisor at MACC; and Jane or John Doe, Chief Classification

Placement Supervisor at Lexington Assessment and Reception Center.  *Id.* at 16.

The Court has before it for consideration, Roppolo's third amended complaint [Dkt. No.

49], Defendants' two motions to dismiss, and two special reports prepared by DCF and DOC officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Dkt. No. 75; Dkt. No. 88].

## I.   ROPPOLO'S ALLEGATIONS

Roppolo raises ten (10) claims in his third amended complaint. Dkt. No. 49. He elaborates upon the claims in his six (6) "Declarations" attached to the third amended complaint. Dkt. No. 49-1; Dkt. No. 49-2; Dkt. No. 49-3; Dkt. No. 49-4.

Claim 1:  Deliberately indifferent denial of adequate mental health care of Roppolo's serious mental health needs at MACC, DCF, and Cimarron Correctional Facility. Roppolo alleges he is prescribed medication to treat his severe manic-depressive bipolar disorder. He claims that from January 2016 until the date of the complaint (April 14, 2020), Defendants Sanford and Larimer, who are mental health staff, made only brief, inadequate contact with him, refusing to actually conduct counseling therapy and refusing to prescribe medication to alleviate his mental disorders. *Id.* at 5.

Claim 2:  Unlawful retaliation against Roppolo for exercising the right of free speech and access to the courts. Roppolo alleges that from January 2017 until the date of the complaint, Defendants Yates, Brown, Adea, Sanders, Knight, Garrison, Andersen, Allbaugh, CoreCivic, and the two Jane or John Does adversely reacted to him with respect to Claims 3-10 in response to his filing grievances and in allowing his friends to record his prison phone telephone conversations in which he voiced his complaints about the inadequate mental health care provided by the DOC staff. *Id.*

Claim 3:  Malicious falsification of incident reports and misconduct rule violation reports.

Roppolo claims that in November 2017, January 2019, February 2019, March 2019, April 2019, and May 2019, Defendants Sanders and Adea directed and approved multiple falsified and unwarranted misconduct reports written against him in reaction to his constitutionally protected conduct set forth in Claim 2. *Id.* at 6.

Claim 4:   Unlawful classification placement of Roppolo at DCF super-maximum segregation unit when he had a serious mental health disorder.  Roppolo asserts that from December 2017 until February 2019, Defendants Sanders, the two (2) Jane or John Does, Adea, Yates, Allbaugh, Anderson, Sanford, Larimer, CoreCivic, and Brown knew it was unlawful to place him in this highly restrictive unit when he had a severe manic-depressive bipolar disorder. *Id.*

Claim 5:  Denial of adequate shelter.  Roppolo alleges that for three weeks in December 2017, Defendants Yates, Adea, Brown, Knight, Garrison, Andersen, Allbaugh, and CoreCivic coordinated to order and knowingly allowed the guards on Roppolo's super-maximum security segregation unit at DCF to house him in a cell that was flooded with sewage, human feces, and human vomit. *Id.* at 18.

Claim 6:  Denial of adequate sanitation.  Roppolo asserts that during the same three-week period in Claim 5, Defendants Yates, Adea, Brown, Knight, Garrison, Andersen, Allbaugh, and CoreCivic coordinated an agreement to ensure their staff refused to provide Roppolo any cleaning supplies to properly remove the human waste from his cell. *Id.* at 18-19.

Claim 7:  Denial of adequate, reasonable safety.  Roppolo alleges that from December 2017 until his release from DCF in July 2019, Defendants Yates, Adea, Brown, Knight, Garrison, Andersen, Allbaugh, and CoreCivic coordinated an agreement to order and allow Defendant Adea

3

to yell out to the other prisoners in Roppolo's unit the false allegation that Roppolo was a "snitch." These defendants then coordinated an agreement to order and allow the prisoners who reacted to the "snitch" allegation by wanting to injure or kill Roppolo to possess knives or shanks to be enabled to unlock their own cell doors at will.  Defendants evidently intended to put Roppolo's life and safety in serious jeopardy, because they ordered the unit guards to refuse to physically intervene or to protect Roppolo from a physical attack, if he were to be escorted by the guards in handcuffs.  *Id.* at 20-21.

Claim 8:  Denial of adequate exercise outside of cell.  Roppolo claims that from December 2017 until his July 2019 release from DCF, Defendants Yates, Adea, Brown, Knight, Garrison, Andersen, Allbaugh, and CoreCivic coordinated the deprivation of exercise outside his cell.  He maintains he was only able to exercise outside for four (4) hours during his 18-month incarceration at DCF.  *Id*. at 21-23.

Claim 9:  Denial of basic hygiene.  Roppolo asserts that from December 2017 until his July 2019 release from DCF, he was deprived of the "lawfully adequate number of weekly showers for a prisoner in segregation housing.  Defendants Yates, Adea, Brown, Knight, Garrison, Allbaugh, and CoreCivic, allegedly purposefully committed the acts and omissions in Claim 7, which resulted in his being allowed only four showers outside his cell during his 18-month incarceration at DCF.  *Id*. at 23-24.

Claim 10:  Denial of adequate clothing.  Roppolo claims that from December 2017 until his July 2019 release from DCF, Defendants Yates, Adea, Brown, Knight, Garrison, Andersen, Allbaugh, and CoreCivic, the defendants coordinated an agreement to order and allow the unit guards to urinate and smear human feces on his weekly change of clothing.  Roppolo had to attempt

4

to clean his prison shirt and pants inside his cell.  *Id*. at 24-25.

Roppolo further alleges that as a direct result of Defendants' alleged conduct set forth in Claims 2, 5, 6, and 9, he contracted multiple staph infections on his feet and legs that limited his ability to walk properly.  He also developed ongoing, severe hemorrhoids from not being able to shower properly, as set forth in Claim 9, which were so painful that he could not sit down, and could only lie on his side.  In addition, because of the conduct set forth in Claims 2 and 8, Roppolo has permanent lower back spinal damage and pain, along with debilitation, damage, and pain in his knee joints and tendons, along with early onset arthritis.  He further claims he cannot stand up straight for long periods of time.  *Id*. at 5-7.

## II.     STANDARD OF REVIEW

Defendants have filed two motions to dismiss, and both allege Roppolo has failed to exhaust the administrative remedies for his claims.  Dkt. No. 76; Dkt. No. 87.  The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *Id*. at 555-56.  "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed.  *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard.  *Erickson v.*

5

*Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ."  *Id*.  A reviewing court need not accept "mere conclusions characterizing pleaded facts."  *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555.  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  With these standards in mind, the Court turns to the merits of Defendants' motions.[1]

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be

---

[1] On December 6, 2021, the Court entered two Orders directing Roppolo to show cause why the Defendants' two motions to dismiss should not be granted.  Dkt. No. 98; Dkt. No. 99.  On December 21, 2021, Roppolo responded by letter, stating his case about mental health therapy should be considered, and he asked the Court to proceed.  He did not offer any defense to the allegations in the motions to dismiss.  Although Roppolo clearly has failed to show cause as directed, the Court will, nonetheless, examine his claims.

dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). The exhaustion requirement applies regardless of whether a plaintiff is confined in a federal, state, or privately-operated facility. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1184 (10th Cir. 2004), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

The DOC has promulgated an Inmate/Offender Grievance Process, OP-090-124, which is used for DOC facilities and for DCF. Dkt. Nos. 76 at 4, 76-1. According to the grievance procedure, an inmate first must attempt to resolve his complaint informally by communicating with staff within three (3) days of the incident. If that is unsuccessful, he may submit a Request to Staff ("RTS") within seven (7) calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within thirty (30) calendar days of submission, he may submit a grievance to the review authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority ("ARA") or the Medical ARA,

whichever is appropriate, within fifteen (15) days of receipt of the reviewing authority's decision or any amended decisions.  The administrative process is exhausted only after all of these steps have been taken.  Dkt. No. 76-1 at 7-16.  Emergency or sensitive grievances may be submitted directly to the reviewing authority without the informal resolution process when the complaint is of a sensitive nature or when substantial risk of personal injury, sexual assault, or other irreparable harm exists.  *Id.* at 16.

Roppolo's complaint is silent with respect to any efforts he made regarding exhaustion of administrative remedies.  He does, however, allege in his "Declarations" that he has filed several grievances against prison staff regarding inadequate medical and mental health care.  Dkt. No. 49-1 at 1.

## IV.   DAVIS CORRECTIONAL FACILITY DEFENDANTS

Defendants Yates, Brown, Garrison, Adea a/k/a/ Ade, Larimer, Sanford, and CoreCivic allege in their motion to dismiss that, while Roppolo submitted grievances when he was incarcerated at DCF, he did not exhaust the administrative remedies for any grieved issue.  Dkt. No. 76 at 5; Dkt. No. 76-2.  According to an affidavit by Terry Underwood, the DCF grievance coordinator, Roppolo submitted the following twelve (12) grievances at that facility, however, he did not exhaust his administrative remedies for any of his claims.  Dkt. No. 76-2.

**Grievance No. 2018-1001-031-G:**  On February 6, 2018, Roppolo submitted an RTS to the law library supervisor, requesting to be provided with Shepardized cases that supported his list of cases.  The RTS response stated that the law library supervisor could not do the research or Shepardize for him, but Roppolo could sign up for legal research computer time.  Dkt. No. 76-3 at 8-9.

8

Roppolo submitted Grievance No. 2018-1001-031-G on February 21, 2018, asking that he be allowed to purchase Shepardized cases that support his cases. *Id.* at 6-7. The grievance was denied on March 1, 2018 with the following notation:

> Inmate Roppolo asked that the Law Library allow him to purchase only the most favorable U.S. Supreme Court decisions that are relevant to the court cases he listed.
>
> After an investigation of the matter Willa Burney, Law Library Supervisor, advised that I/M Roppolo is able to do his own research into what cases would be most favorable to the cases he listed. It is not the Law Library's or the Law Library clerks' responsibility to do the research for him. After I/M Roppolo determines what cases are most favorable, the Law Library will print them and allow him to purchase the documents.

*Id.* at 5.

Roppolo appealed the grievance response to the Medical ARA, asserting he is mentally disabled and unable to use a computer. *Id.* at 3-4. On March 27, 2018, the grievance was returned to him unanswered, because it was improperly submitted to the Medical ARA when it did not concern medical issues. *Id*. at 2.

**Grievance No. 2018-1001-095-G:** On April 4, 2018, Roppolo submitted an RTS to Health Services Administrator Larimer, complaining that medical services refused to provide him mental health therapy. He stated he was willing to pay out of pocket for mental health therapy, if Larimer would allow it. Larimer responded on April 9, 2018, advising: "This is not available--you have been given handouts from mental health to help you." *Id*. at 13.

On April 27, 2018, Roppolo submitted Grievance No. 2018-1001-095-G, complaining that he had been asking DOC and DCF for counseling for years, but he only received handouts. *Id.* at 12. The grievance was returned to him unanswered on April 30, 2018, as untimely, because it was filed more than fifteen (15) days after his RTS was answered. In addition, the RTS and the

grievance requested different forms of relief, the grievance form was not completely correctly, and the grievance was not legibly written or typed in blue or black ink. *Id.* at 10-11.

**Grievance No. 2018-1001-098-G:**  On April 23, 2018, Roppolo submitted an RTS to Health Services Administrator Larimer, demanding mental health therapy from DOC or DCF. Larimer responded on April 25, 2018, advising that Roppolo had seen mental health services three times in April 2018. *Id.* at 18.

Roppolo submitted Grievance No. 2018-1001-098-G on May 1, 2018, stating he was suffering mentally and wanted therapy, not handouts or quick chats at the door. *Id.* at 17.  The May 1, 2018, response to the grievance stated:

> Inmate Roppolo requested that he be treated by the Mental Health Staff more than be given handouts or quick chats at his door.  After an investigation of the matter by Ray Larimer, Health Services Administrator, I/M Roppolo was seen by Mental Health on 4/12/2018, 4/23/2018 and 4/24/2018.  I/M Roppolo is being followed per DOC Guidelines.  Inmate Roppolo's Relief is Denied.

*Id.* at 16.

May 24, 2018, Roppolo appealed the grievance response to the Medical ARA.  *Id.* at 15.

On June 8, 2018, the grievance appeal was returned unanswered with the following explanation:

> You are out of time to submit this complaint.  According to OP-090124, the documents must be received in the appropriate office within the requisite time frame.   Policy mandates that your "Request to Staff" (RTS) form be received within seven (7) calendar days of the underlying incident.  The event of which you complain occurred on April 5, 2018.  Your RTS was not stamped into the law library until April 23, 2018.  Consequently, you are out of time to submit grievance #2018-1001-00098-G.

*Id.* at 14.

**Grievance No. 2018-1001-347-G:**  On November 22, 2018, Roppolo submitted two RTSs to the dental supervisor.  The first RTS stated that approximately a year earlier, he had been assured

he was on the dental list to have cavities filled and then have a new partial made. He further stated he had submitted a request to have his cavities filled, but he also asked to address his repaired partial that no longer fit. The November 28, 2018, response advised that Roppolo would be notified on the day of his appointment. *Id.* at 25-26.

The second RTS to the dental supervisor requested the date of his first dental appointment at DCF. The response stated that it appeared the appointment was on January 9, 2018. *Id.* at 24.

Roppolo filed Grievance No. 2018-1001-347-G on December 4, 2018. He asserted he had been told he was on the list to have cavities filled and a new partial. He claimed he had lost four (4) more teeth since his first dental visit, and he could not eat. His attached RTS claimed he would be notified of his appointment, and he wanted to know if the dentist intended to make him wait another year for treatment. *Id.* at 22-23.

On December 10, 2018, Roppolo's grievance was returned unanswered, because: (1) he had attached more than one answered RTS; (2) The RTS was not consistent with the issue on the grievance; (3) the grievance was not legibly written or typed in blue or black ink; and (4) the grievance raised two issues when only one issue or incident may be presented in a grievance. Roppolo was advised that he could resubmit an original grievance within ten (10) days with the noted corrections completed. *Id.* at 20-21. The DOC defendants assert that Roppolo did not resubmit the grievance.

**Grievance No. 2018-1001-381-G:** Roppolo submitted an RTS to Warden Yates on December 10, 2018. The RTS was redirected to the facility's mental health staff. Roppolo asked if he could have his agent post on the internet Roppolo's feelings, requests, desires, and story concerning his mental health. He also asked whether his request was covered by his First

11

Amendment rights.  The response by Sandy Sanford, LCSW, stated this was not a mental health issue.  *Id.* at 30.

Roppolo next filed a grievance, claiming his RTS was not answered.  He asserts the RTS was a request to know whether his agent could post Roppolo's life story, including his mental health issues, pursuant to the First Amendment.  *Id.* at 29.  The grievance was returned unanswered on December 28, 2018, because it raised a non-grievable issue, and Roppolo must obtain legal advice from his attorney.  *Id.* at 27-28.

**Grievance No. 2019-1001-026-G:**  On December 18, 2018, Roppolo submitted an RTS to Mrs. Adea, stating that Lt. Sanders at MACC had "aggressively and sexually sat [him] up and forced him to sign write-ups that landed [him] in DCF Max."  He wanted to know who at the Lexington facility arranged to send him to DCF Max.  The response stated that Ms. Adea had no access to that information, and DCF simply receives the DOC inmates that are sent.  *Id.* at 34.

On January 8, 2019, Roppolo submitted a grievance on this issue, which was returned unanswered.  The grievance response stated that Roppolo would receive an amended RTS from Ms Adea.  Roppolo was advised that after he had done what Ms. Adea suggested, he could resubmit his grievance regarding this matter.  *Id*. at 31-32.  Roppolo, however, did not resubmit the grievance.

**Grievance No. 2019-1001-053-G:**  On January 18, 2019, Roppolo submitted an RTS to the Chief of Security, stating that despite a warning not to access the internet directly or indirectly, he had done so.  He had used a prison telephone to record to his professional speakers' website about his true story of imprisonment.  He asked whether he could expect punishment for disregarding the correctional officers' direct orders and expressing his life story to the public.

12

Chief Brown responded on January 24, 2019, stating that a review of Roppolo's actions would be conducted, and if he was found to be in violation of policy, he would receive a write-up. *Id.* at 39-40.

On February 1, 2019, Roppolo submitted a grievance, stating Warden Yates or Chief Brown refused to follow their own operating procedures. Roppolo had recorded from the prison telephone to his website, and Warden Yates and Chief Brown had done nothing in response. *Id.* at 76-3. The grievance was returned unanswered on February 1, 2019, because Roppolo had abused the grievance process through a grievance about de minimus issues. Because of his continued abuse of the grievance process, the grievance response served as an official warning. *Id.* at 36-37.

**Grievance No. 2019-1001-192-G:** On April 3, 2019, Roppolo submitted an RTS to Unit Manager Adea, stating he was re-posting his question about whether he could phone his agent on the DCF telephone and record his mental health story, and then post the recording on Roppolo's website. The response stated that Roppolo's voice recording could not be placed on his website. *Id.* at 50

On April 11, 2019, Roppolo submitted a grievance, stating that Ms. Adea had demanded that he not use the prison telephone to call his agent and record their conversation to be uploaded to Roppolo's website. He stated he wanted therapy and to be well. *Id.* at 48-49. The grievance was returned on April 17, 2019, because the RTS was not consistent with the issue presented in the grievance. He was granted ten (10) days to resubmit an original grievance with the noted corrections completed. *Id.* at 46-47.

Roppolo resubmitted his grievance on April 26, 2019. He attached to the grievance an

13

RTS seeking an answer to the question, "[I]s the above not my--Freedom of Speech?" which referenced his request to have phone recordings made and uploaded to his personal website.  In his grievance Roppolo asked, "Do you deny my agent to recold [sic] he & I phone call to his personal recolding [sic] device and later upload to his personal website . . . [?]"  Unit Manager Adea's response indicated it should not be done while he is in DOC custody.  He further stated he wanted help and wanted to know if this concerned his freedom of speech.  *Id.* at 43-45.

The re-submitted Grievance No. 2019-192-G was returned unanswered on May 29, 2019, noting that the grievance form was not correctly completed, that the grievance and RTS must be specific as to a complaint with dates, places, personnel involved, and how the inmate was affected.  Finally, the response noted that because of Roppolo's continued failure to properly submit the grievance, he was out of time.  *Id.* at 41-42.

**Grievance No. 2019-1001-194-G:**  On April 3, 2019, Roppolo submitted an RTS to Unit Manager Adea, stating he needed the name of an inmate Adea had attempted to place in Roppolo's cell several weeks prior.  Roppolo wanted the name for his non-association form. Adea responded on April 5, 2019, stating she was unsure of whom he was speaking.  *Id.* at 55.

Roppolo filed a grievance on April 11, 2019, stating he needed the other prisoner's first name, because a sergeant had given Roppolo the last name.  The grievance was returned unanswered on April 17, 2019, as noncompliant with OP-090124, because it had writing in the margins.  Roppolo was advised that he had ten days to properly resubmit an original grievance with the corrections completed.  *Id*. at 51-54.  There is no indication that Roppolo resubmitted.

**Grievance No. 2019-1001-206-G:**  On April 16, 2019, Roppolo submitted an RTS to Unit Manager Adea on April 16, 2019, asking if Adea was going to punish him for violating the

operating procedures and Adea's direct orders.  Roppolo added, "I don't think you can."  Adea responded on April 17, 2019, that if he broke policy, he would receive a misconduct.  *Id.* at 60.

Roppolo submitted a grievance on April 29, 2019, again asking for a yes-or-no answer about whether he would be punished for breaking the OPs.  *Id.* at 58-59.  The grievance was returned on the day it was received, because he had raised a non-grievable issue.  *Id.* at 56-57.

**Grievance No. 2019-1001-237-G:**  On April 16, 2019, Roppolo submitted an RTS to Ms. Sanford of the mental health services, stating he wanted to speak with her and decide together what could be done to help his intense mental and emotional pain.  Ms. Sanford's April 18 response stated, "We have talked since you wrote this."  *Id.* at 64-65.

Roppolo submitted a grievance on April 26, 2019, stating, "Stop punishing me for being scared to come out of this hold.  Help me."  The grievance was returned unanswered on May 29, 2019, because Roppolo had used an outdated grievance form.  He also was advised that medical issues must be addressed to Ray Latimer, Health Services Administrator.  Roppolo was granted ten (10) days to resubmit an original grievance with the corrections completed.  *Id.* at 61-63.  There is no indication he resubmitted.

**Grievance No. 2019-1001-238-G:**  On April 12, 2019, Roppolo submitted an RTS to Unit Manager Adea, stating that approximately three months earlier, he had a nervous breakdown and was placed on suicide observation.  He was convinced that someone would murder him.  He insisted he was not a "rat" or suicidal.  Roppolo wanted Adea to look at his situation as a mental health issue and consider the fact that he had no behavior write-ups.  He also requested that his levels, canteen, and phone access be returned, and he be assigned a good cellmate.  Ms. Adea's April 17 response stated that Roppolo's misconducts were the result of his refusal to leave

segregation. *Id.* at 70-71.

On April 26, 2019, Roppolo submitted a grievance, stating he had made it clear to Ms. Adea that he was suffering mentally and that he was afraid to leave segregation, because he believed DCF or Oklahoma politicians were trying to have him murdered.  He asked for confirmation that he had a mental health issue, the return of his privileges, and for an end to punishment.  The grievance was returned unanswered, because the grievance form was not completed correctly, in its entirety, on the correct form.  Also, the grievance and the RTS must be specific as to the complaint, dates, places, personnel involved, and how the inmate was affected. Further, misconduct reports may not be appealed through the grievance process.  *Id.* at 66-69.

The record shows that Roppolo clearly had access to the DCF administrative remedies process, however, he failed to properly exhaust his remedies as required by the PLRA.   Further, Roppolo does not allege that prison officials prevented him from exhausting his administrative remedies.  Accordingly, Defendants Yates, Brown, Garrison, Adea (Ade), Larimer, Sanford, and CoreCivic's motion to dismiss [Dkt. No. 76] must be GRANTED.

## V.   DEFENDANT JOE ALLBAUGH

Defendant DOC Director Joe Allbaugh also has filed a motion to dismiss, alleging Roppolo failed to exhaust the administrative remedies for claims against Allbaugh.  Dkt. No. 87.  Mark Knutson, Manager of the DOC ARA, states by an affidavit that he reviewed the ARA records for Roppolo and located two (2) grievance appeals concerning harassment or retaliation by staff.  Both appeals were unanswered because of procedural errors.  Dkt. No. 88-3.  Knutson further asserts that Roppolo has not exhausted his administrative remedies with the ARA.  *Id.*  The Court notes that although both of Roppolo's grievances concern issues arising at MACC, they were filed at

DCF after his transfer to that facility.

**Grievance No. MACC 18-12:**  On November 13, 2017, Roppolo filed an RTS to the MACC Warden, stating that on November 9, 2017, he was taken from his cell in the segregated housing unit to Lt. Sanders' office.  He claimed there were two other men in Sanders' office.  Roppolo signed several write-ups stating was guilty of "redlighting and cigarettes."  He also was forced by Sanders and one of the other men to sign a write-up he was not allowed to read, although it said something about Roppolo killing officers.  The officers demanded Roppolo's signature on the form, and he signed it because he was afraid for his life.  In the RTS, Roppolo requested an investigation into his claims with names of the unknown men in Lt. Sanders' office.  The response stated that "this was handled verbally by talking with [Roppolo]" in the segregated housing unit, because he had filed a complaint pursuant to the Prisoner Rape Elimination Act ("PREA") about the matter.  The issue then was forwarded to Internal Affairs for review.  Dkt. No. 88-8 at 9-10.

On February 12, 2018, Roppolo filed a grievance asking for the results of the Internal Affairs investigation into an ongoing PREA report about Lt. Sanders at MACC and others who allegedly had sexually harassed him.  Also on February 12, the review authority returned the grievance unanswered, because it was untimely.  *Id.* at 6-8.

On February 16, 2018, Roppolo filed a grievance appeal to the ARA, alleging probable error by the reviewing authority with respect to the PREA report.  He claims that in response to the report, he was "uprooted and retaliated against then transferred to [illegible] a maximum security . . . ."  On February 28, 2018, the grievance appeal was determined to have been improperly filed because it was out of time.  *Id.* at 3-5.

**Grievance No. MACC 18-13:**  On February 12, 2018, Roppolo filed a grievance to the

17

MACC Warden, complaining that in response to his exercise of the First Amendment right of freedom of the press, he was placed in retaliatory segregation at MACC. He claimed that on November 19, 2017, while housed in that unit, he was forced into Lt. Sanders' office where he and many other correctional employees began to sexually harass him. He asked to be told why he was retaliated against for lodging a PREA sexual harassment complaint. Roppolo's grievance was returned unanswered on February 12, 2018, because no RTS response was attached, the appeal was out of date from the incident, and it was not of a sensitive/emergency nature. *Id.* at 15-17.

Roppolo filed a grievance appeal on February 16, 2018, alleging the facility head had committed probable error in determining Roppolo's grievance was not of a sensitive nature, which would not require an RTS. The DOC ARA denied the appeal, because no RTS was attached, it was not of a sensitive/emergency nature, and it was out of time from the date of the incident. *Id.* at 12-17.

**Medical Grievance:** Roppolo also filed one medical grievance. On August 14, 2017, he filed two Requests for Health Services, asking for a counseling session for anxiety and a mental health evaluation. Dkt. No. 88-6 at 7-9. On March 21, 2017, he submitted an RTS, stating he takes medications for bi-polar disorder and seizures, and he was in need of mental health treatment, because he was having serious issues in the open dorm setting where people can move around and make noise 24 hours a day. He asked to be placed in a "mental health unit\intermediate care housing unit," where he could sleep and have peace of mind. *Id.* at 6.

On August 14, 2017, Roppolo filed a grievance stating that he had filed several RTSs for counseling. One RTS was unanswered, and one response stated that he already had received counseling, which Roppolo denied. He claimed he had gotten the runaround or the brush-off, or

he was threatened when he asked for help.  *Id.* at 4-5.

On September 1, 2007, Buddy Honaker, DOC Medical Services Manager, responded to Roppolo's grievance.  The grievance was returned unanswered because:  (1) the grievance issue was not of a sensitive or emergency nature, therefore, the standard grievance process must be used; (2) the grievance was untimely; (3) the grievance was sent to an improper authority; (4) the grievance form was incomplete; (5) the RTS form lacked the required specificity regarding dates and personnel involved, as required by OP-090124 § (C)(2); (6) additional documents were included with the grievance and RTS forms, contrary to OP-090124 § V(A); and (7) the issues and requests presented in the grievance differed from or were in addition to those raised in the RTS. Roppolo also was advised that the facility's sick call process was the appropriate method for addressing any health concerns.  Any such concerns should be documented on a Request for Health Services form.  *Id*. at 2-3.

After careful review, the Court finds Roppolo failed to comply with the DOC's requirements for exhaustion of administrative remedies for his medical grievance.  Roppolo's medical claims are thus unexhausted.  Roppolo clearly had access to the DOC administrative remedies process, however, he failed to properly exhaust his remedies as required by the PLRA. Accordingly, Defendant Allbaugh's motion to dismiss [Dkt. No. 87] is GRANTED.

## VI.  DEFENDANTS KNIGHT, ANDERSEN, AND SANDERS

On December 6, 2021, the Court entered an Order directing Roppolo to show cause why Defendants Randy Knight, Donnie Andersen, and Lt. Sanders should not be dismissed from this action for Roppolo's failure to serve them within ninety (90) days after filing the complaint, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  Dkt. No. 100.  Roppolo was advised

that failure to show cause as directed would result in the dismissal of Defendants Knight, Anderson, and Sanders from this action without further notice.  *Id.*

On December 21, 2021, Roppolo filed a letter that was construed as a response to the show-cause Order.  Roppolo asserted his case requesting mental health care should be considered, however, he did not mention the issue of service of these defendants.  The Court, therefore, finds Defendants Randy Knight, Donnie Andersen, and Lt. Sanders should be DISMISSED WITHOUT PREJUDICE for Roppolo's failure to serve them in accordance with Fed. R. Civ. P. 4(m).

## VII.   DEFENDANTS JANE OR JOHN DOE

Roppolo also did not serve the two Jane or John Doe defendants.  Roppolo claimed they were Chief Classification Placement Supervisors at MACC and Lexington Assessment and Reception Center, however, he makes only vague allegations about them in Claims 2 and 4 of the complaint.  Roppolo did not serve these defendants, and his grievances lack allegations against them.  The Court, therefore, DISMISSES these defendants for Roppolo's failure to exhaust administrative remedies pursuant to the PLRA.

## VIII.   REQUEST FOR INJUNCTIVE RELIEF

Roppolo has requested injunctive relief in the form of ordering the defendants to hire more mental health staff and implementation of more rigorous training of that staff.  He also requests a requirement that prison mental health counseling must last 30 minutes to an hour per visit.

Because the Court finds there is no ongoing constitutional violation, the request for injunctive relief must be denied.  *See Green v. Mansour*, 474 U.S. 64 (1985).  Further, a plaintiff can only be granted relief for himself, not relief for the violation of someone else's rights.  *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). Thus, Roppolo's request for injunctive

relief is DENIED.

THEREFORE, IT IS HEREBY ORDERED that:

1.      Defendants Yates, Brown, Garrison, Adea a/k/a Ade, Larimer, Sanford, and CoreCivic's motion to dismiss [Dkt. No. 76] is GRANTED.

2.      Defendant Allbaugh's motion to dismiss [Dkt. No. 87] is GRANTED.

3.      Defendants Randy Knight, Donnie Andersen, and Lt. Sanders are DISMISSED WITHOUT PREJUDICE for Roppolo's failure to effect service of these defendants pursuant to Fed. R. Civ. P. 4(m).

4.      Defendants John and Jane Doe are DISMISSED for Roppolo's failure to exhaust administrative remedies for claims against them.

5.      Roppolo's request for injunctive relief is DENIED.

6.      A separate judgment shall be entered in this matter.

Dated this 27th day of September 2022.

_____

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE